CENTRAL STEEL ERECTION CO., a Corporation, and United States Fidelity and Guaranty Co., a Corporation, Appellants,

v.

Merrill F. WILL and Karl K. Larsen, Doing Business as Willar Construction Co., Appellees.

No. 17108.

United States Court of Appeals Ninth Circuit.

May 16, 1962.

As Amended on Denial of Rehearing Aug. 10, 1962.

Rosling, Williams, Lanz & Kastner, Seattle, Wash., Palda, Palda, Peterson & Anderson, Minot, N. D., William Cameron, Seattle, Wash., for appellants.

Thor P. Ulvestad, Seattle, Wash., for appellees.

Before POPE, HAMLEY and KOELSCH, Circuit Judges.

POPE, Circuit Judge.

The appellant, Central Steel Erection Co., hereafter called Central Steel, had a contract with the United States for the construction of three radar towers for use by the United States Air Force, two of these towers to be erected at Ft. Lawton, in Seattle, Washington, and one at Neah Bay, some eighty miles distant from Seattle. As part of its contract, and pursuant to the provisions of the Miller Act, Title 40 U.S.C.A. §§ 270a and 270b, Central Steel procured and furnished the bond required by said Act, executed by appellant United States Fidelity & Guaranty Co., as surety, providing for the security of subcontractors and materialmen in the performance of their work under said contract.

Central Steel, prime contractor, then entered into a subcontract with the appellees Will and Larsen, partners doing business under the firm name and style of Willar Construction Company, providing for the construction by said sub-

contractors of the foundations for said three radar towers. The subcontract provided for payment to Willar of a total sum of $32,841. It expressly provided for a deviation by subcontractors from the plans and specifications in one particular: The specifications required that the tower foundations at Ft. Lawton should be built according to what was known as type 305; however, the subcontract, by way of deviation, specifically called for those foundations to be built according to a plan or type known as 259.

The contract between the parties recited that responsibility for this deviation would be that of the prime contractor "without prejudice to rights of subcontractor in event of rejection by government." Type 259 called for construction of a foundation consisting of two concentric rings of concrete columns set in the ground to which the tower supports would be attached. The Government refused to permit this attempted alteration in the specifications and insisted upon type 305 foundations as called for in the original specifications. These called for a solid concrete slab as foundation and construction in that manner required more concrete and more steel and other materials. Appellees were then required to build the 305 type foundations at Ft. Lawton thereby supplying more material and more labor than that contemplated by the subcontract as executed.

Under the contract executed between the parties with respect to the Neah Bay foundation, the subcontractors were required to clear away an old foundation and then drill into the underlying rock and anchor to it by grouting in the tower anchor bolts. When the appellees began work at Neah Bay, it was discovered that there was no underlying rock. Central Steel then directed the appellees to leave the site at Neah Bay and not to proceed until further directions were given them.

It was discovered that a heavy concrete foundation had to be built at the planned location at Neah Bay. Appellees were then requested by Central Steel to build such a foundation. They proceeded to do so and completed all the requested work, including the building of the type 305 foundations at Ft. Lawton. No question arises as to the completion of the requested work in a satisfactory manner.

Central Steel paid to Willar the sum of $28,557. It is conceded that the amounts of labor and materials actually furnished in the construction of the three foundations were substantially more than that called for in the original subcontract.

The action was instituted in the court below against Central Steel and the United States Fidelity and Guaranty Co. to recover a balance alleged to be due Willar for the construction referred to. The parties are in disagreement as to just what their agreement was with respect to the amount required to be paid to Willar for the extra and additional work, labor and materials which Willar furnished. This difference arises out of the varying interpretations of the effect of certain letters which were exchanged between the parties when it became apparent that different and more expensive foundations would have to be constructed at Fort Lawton, and that entirely different procedures would have to be utilized in the construction of the foundation at Neah Bay.

Willar first submitted two lump sum proposals covering the additional or different work in letters to Central Steel dated August 6 and August 7, 1959. On August 12, 1959, Central Steel wrote to Willar directing the latter to proceed at once with the work at Ft. Lawton stating that work at Neah Bay would be held up pending advice from the Air Force concerning the changes. Referring to the Ft. Lawton job, this letter stated: "The work will be done there on a cost plus 10%. * * * The same basis will be used on Neah Bay." On August 21, Central Steel advised Willar that it had received a directive from the Government Contracting officer relating to the Neah Bay job. The letter also directed Willar to commence work immediately at Neah Bay and at Ft. Lawton.

On September 2, 1959, Willar wrote to Central Steel advising that they were pro-

ceeding with the work at both Ft. Lawton and at Neah Bay. The letter further stated that Willar would do the Ft. Lawton job for a lump sum stated in the letter. On September 8, following, Central Steel wrote Willar stating: "We [sic] will do the additional work on the basis of our letter of August 12, 1959. Your proposal of September 2, 1959, is rejected."

On September 18, 1959, Willar wrote to Central Steel with respect to the progress of the work and stated: "We received your letter dated September 8, 1959 today and it seems to me that Central Steel Erection Company is trying to modify our contract agreement. For any changes of the contract both parties have to agree and cannot be changed from just the say so from either party." After describing the work already completed, the letter stated: "So far this work was based on the original bid plus the changes required by you and on our additional proposal with our latest revision. The Ft. Lawton job is going on based on our latest proposal or as changes stated in the contract."

It thus appears that while the work on all these foundations was being carried on by Willar on the direction of Central Steel, the parties were writing each other back and forth, Central Steel stating that the work would be done on cost plus 10% and Willar stating that the work is being done "on our latest proposal",—a proposal for a lump sum amount.

The court found with respect to Ft. Lawton: "That no contract or agreement was entered into between the parties specifying the method of compensation for the furnishing and placement of the additional materials and additional labor required to conform to the specifications of the contract with the United States of America."

The court made a similar finding with respect to the compensation for work at Neah Bay. We think it plain that this finding, in the light of the correspondence between the parties and the testimony given at the trial, was not erroneous but was supported by the record.

What happened was that Willar was requested to do certain extra and additional work but there was never any meeting of the minds of the parties upon any arrangement or system of compensating them. The court therefore found that Willar was entitled to be paid on a basis of quantum meruit.

■ Appellants argue that Willar cannot maintain this action for failure first to exhaust their administrative remedies. The argument is that since Willar in its subcontract agreed to be bound by the terms of the main contract between the prime contractor and the United States, the subcontractor was bound to comply with the disputes provision of the prime contractor's undertaking with the United States. Appellants point to that contract's disputes clause which provides that any dispute concerning a question of fact arising out of the contract which is not disposed of by agreement shall be decided by the Contracting Officer, and that from that officer's decision the contractor may appeal to the head of the department, whose decision shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious or so grossly erroneous as to necessarily imply bad faith.[1]

For the reasons stated in Fanderlik-Locke Co. v. United States, 10 Cir., 285 F.2d 939, this disputes clause in a case of this kind applies only to the prime contractor and not to a subcontractor.

■ It is also argued by the appellant that Willar was not entitled to recover

1. In making this argument appellant refers to clause 6 of defendant's Exhibit A–8. The original of that exhibit has been filed with the record in this case and the exhibit shows that clause 6 referred to has been stricken from the contract.

because of its failure to comply with a provision of its contract requiring it to furnish copies of invoices and labor time sheets which must be kept and exhibited for all claims and payments relative to the work.

We find no basis for this contention, for the record does not show any contract provision requiring Willar to furnish or keep copies of invoices and labor. While the parties were writing back and forth, as above described, each one asserting what the other's obligation would be in respect to compensation for the job. Central Steel included in its letter of August 12, above referred to, a sentence to the effect that copies of invoices and labor time keeping must be kept and exhibited. But the offer or counter-offer contained in that letter was never accepted by Willar. This was a mere unilateral statement of Central Steel. Since the work here in question was performed without the execution of any contract between the parties, we find no basis for asserting a breach of a condition which had never been agreed to by the parties.

■■ Another contention of appellants is that a surety under the Miller Act is not liable for a recovery based on quantum meruit. The cases cited in support of this contention are not in point here. Such a recovery is proper. Continental Casualty Co. v. Schaefer, 9 Cir., 173 F.2d 5, 9, a case which applies the rule that "the Miller Act should receive a liberal construction to effectuate its protective purposes", United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed.2d 776.

This, brings us to an inquiry, called for by the specifications of error, into the question of whether the amount of the court's award was proper or properly arrived at.

The record before us is nothing if not confusing. The findings are of no assistance. It appears generally that two different methods were used for computing the amounts earned: one was used for the Ft. Lawton job, the other for Neah Bay. The findings do not spell this out; nor do they aid us in any manner in meeting the challenge of the appellants that there was no basis in the evidence for an award of the amount of the judgment which came to $44,141.96, besides interest. The finding fixing the amount due, No. XIV, contents itself with naming a total lump sum of $39,867.96, awarded for the additional or extra work. This leaves us to speculate as to just how the trial judge arrived at that sum.

After the case was submitted, we called for further briefs from the parties in which they were requested to point to the pages of the record which would elucidate this matter for the court. Although this court should not be called upon to perform such a task, we are obliged to go to such original sources as we can find and recompute this complicated account for the purpose of ascertaining, if possible, how much of the sum awarded is sustained by the record.

In view of the inadequate condition of the findings here, we have seriously considered remanding the case for further findings. However, the findings do disclose the fact that the trial judge, with two minor exceptions, accepted and found correct the items of extra and additional work claimed by Willar. And, although the findings fail to expound just how the court arrived at its final conclusion, we are of the view that we may avoid a remand, and have undertaken the task, which ought not to have been imposed on us, to put the account together and draw the appropriate conclusions which, as we shall indicate, differ from those of the trial court. Not every case, where the findings are defective, need be remanded to the trial court. Yanish v. Barber, 9 Cir., 232 F.2d 939, 947.

The work at Ft. Lawton was treated as including the work specified in the subcontract plus extra work required when Willar assumed to build a 305 type foundation. The only way in which the award can be calculated as it affects the Ft. Lawton job is by assuming, as the trial

judge evidently did,[2] that the work originally called for at Ft. Lawton, where the change was ordered, was actually completed together with the extra work.

The proof with respect to what was done at Ft. Lawton consisted primarily of calculating the extra yardage of concrete which was over and above the amount specified under the original contract and in like manner calculating the additional pounds of steel and of steel bolts and the extra amount of labor which was involved in placing and erecting these additional materials.

The testimony given on behalf of Willar stated what those costs were and did so by computing into a single per pound figure the cost of additional materials plus the cost of labor in placing such materials on the job. Thus it was testified that the additional work at Ft. Lawton required the use of 78,000 additional pounds of reinforcing steel and when the labor of placing this steel in the job was added the actual cost per pound for each pound of such additional steel was 13.6¢. The additional reinforcing steel plus the labor thereon cost the plaintiffs Willar $10,608.

In like manner the additional concrete amounting to 215 cubic yards cost $13.42 per yard, making $2885.30, and $18.60 per yard for the cost of placing the concrete, or a total of $3999 for that labor. The additional steel bolts plus the cost of placing them, it was testified, cost 36¢ per pound for 1834 pounds, making an additional $660.24. The total of these items, $18,152.54, the court found to be correct and reasonable.

The court also allowed an additional sum amounting to 12 percent on that total for overhead and profit. We shall have occasion to discuss this allowance hereafter.

Disregarding the items of overhead and profit for the time being, we come then to an inquiry as to what total amount ought to be payable on account of the original work specified, plus the extras, at Ft. Lawton. The subcontract, as originally executed, did not segregate the amount to be paid for the work at Ft. Lawton from the amount to be paid for the construction at Neah Bay. A single lump sum, $32,841, was named for all the work both at Ft. Lawton and at Neah Bay. However, the pleadings of the parties disclose that this total sum was a combination of two agreed amounts: $10,234, for the work at Neah Bay, and $22,607, for the work at Ft. Lawton. These amounts are set forth in paragraphs VII and IX of the complaint, and they are admitted in the answer. It would therefore appear that the total amount earned for the work actually done by Willar at Ft. Lawton would be as follows:

| | |
|---|---|
| Agreed amount under original contract | $22,607.00 |
| Cost of extras as above stated | 18,152.54 |
| Total, excluding profit and overhead | $40,759.54 |

As we have previously noted, the situation at Neah Bay was such that it can be said that no portion of the original specified construction was ever performed there. The case was tried upon that theory and neither party contends that the work done at Neah Bay should be treated as representing in part the original contract. Therefore, it must be taken that all of the work done at Neah Bay was performed without any express contract with respect to the sums to be paid therefor, and any award would have to be made, as the trial judge held, on the basis of quantum meruit.

The evidence on behalf of the plaintiffs which the trial court accepted as true and correct and as reasonable in amount, was that the cost to Willar for the construction at Neah Bay totaled $23,429.12, without regard to any amount allowable for profit or overhead. The

---

2. This is one thing the judge wholly failed to spell out.

total claimed was broken down by the witness Will into the following items:

| | |
|---|---|
| Labor | $11,077.41 |
| Materials | 10,335.45 |
| Materials furnished from Willar's warehouse | 347.10 |
| Rental of Willar's equipment | 1,720.20 |
| | $23,480.16 |
| The court disallowed two items, totaling | 51.04 |
| and thus arrived at the total above stated | $23,429.12 |

With respect to this sum of $23,429.12, the trial court allowed thereon and awarded to Willar, 15% for overhead, and 10% for profit, (the profit figured on both overhead and actual material and labor costs). Hereafter we shall discuss the propriety of making such percentage allowances both in respect to Neah Bay work and in respect to extra work at Ft. Lawton.

On the Ft. Lawton totals, the court's findings do not disclose whether the sums charged for materials and labor on that extra work did or did not include an allowance for overhead or profit, although an examination of an oral opinion of the court given at the conclusion of the trial would indicate that the Judge did in fact allow an item for such overhead and profit on the extra work amounting to 12% on the labor and materials previously mentioned.[3]

The briefs of appellants discuss the question of the propriety of this overhead allowance for work at Neah Bay at considerable length. They assert that this percentage allowance for overhead is improper because the amounts allowed under the heading of "materials" include many items of overhead; and that to apply such a percentage on these other costs amounts to a double charge for overhead expenses.

Appellants, it will be recalled, assert that the agreement between the parties was that the extra and additional work here involved was to be performed by Willar for "cost plus 10%"; that under such an agreement cost means "labor and material", and it is their position that under such an agreement items which are properly termed overhead cannot be included as costs, but that the ten percent contractor's profit must be taken to cover such things. Thus they say that the salaries of executives or administrative officials, the cost of borrowing money for the job, office expenses, the use of necessary tools and equipment are required to be furnished by the contractor at his own expense.

We find no occasion here to decide whether one doing work for "cost plus 10%" is entitled to payment for overhead. The law in Washington, which controls here, (see Continental Casualty Co. v. Schaefer, 9 Cir., supra), appears to be contra to appellants' position. Hopkins v. Ulvestad, 46 Wash.2d 514, 282 P. 2d 806, 810. What concerns us now is whether, in this particular case, assuming overhead items are properly included in the charges, the court's addition of a 15% general allowance for overhead, represented a double charge for such items.

In the list of Neah Bay costs which the court allowed to Willar, there are numerous items which appear to represent overhead and not direct costs. Thus there are included charges for the rent of small tools and equipment, the cost of a new axle to be used to replace a broken one on a rented truck, sharpening tools, rental of trucks, spare parts for trucks, drill bits, equipment rental, replacement of tires on rented trucks, telephone calls, transportation of truck and tractor to the site, copying invoices, and the like.

Appellant Central Steel contends that none of these items should have been

---

3. As above stated, the court's findings did not break down or in any manner expound the basis for his lump sum award; but in the oral opinion the court indicated that he was allowing a total of $20,326 for extras on the additional construction

on the Ft. Lawton job. If the figures for Ft. Lawton given above are compared with this total, it would appear that approximately 12% had been added to the totals previously given.

allowed;—this under its theory that its contract was one for cost plus 10%, and that overhead is not allowable in such a case. As we have noted, the case was tried and determined by the trial court upon the quantum meruit theory. Under the circumstances here an award on the basis of quantum meruit would mean that Willar should be entitled to recover its actual costs in performing the job without regard to whether they are costs for overhead or not. The question is: what could the work actually done by Willar have been purchased for? United States for Use of Susi Contracting Co. v. Zara Construction Co., 2 Cir., 146 F.2d 606, 611. Accordingly we reject the contention that none of these items mentioned should have been included in the trial court's award. But, if they are to be included, as we hold they should, the question remains whether there was any basis for the Judge's additional award of the 15%.

The only witness who gave any testimony relating to a 15% charge for overhead, or as to any charge for overhead, was the witness Bishop who testified as to the practice of charging in cost-plus contracts in this area. He testified that in such cost-plus contracts it was customary to add a 15% item for overhead over and above the percentage charge for profit.

It is plain that the witness' testimony related to a different kind of contract from the one we are dealing with here. It did not assume what we have present here, namely, inclusion in costs of specific items of overhead expense. We find nothing in the record to warrant including overhead items with material costs and then in addition allowing a fixed percentage for overhead. We conclude that the trial court erred in adding 15% for overhead.

■ We also find nothing in the record to warrant an inclusion in the sums allowed for extra work at Ft. Lawton a 12% charge for "overhead and profit". We are of the opinion however that in calculating an amount properly recoverable on the basis of quantum meruit some

allowance for profit is permissible and proper as representing an actual amount laid out by the contractor in the performance of the work. Losli v. Foster, 37 Wash.2d 220, 222 P.2d 824, 831.

■ We find no basis for finding fault with an allowance of 10% for profit on all the labor, material and other expenditures contributed to the performance of the work. However, there is no basis for allowing a 10% profit on the rental charge made by Willar for use of its equipment, the item of $1720.20 previously referred to. The testimony was that this represented the customary rental charged by persons in the business of renting such equipment. It must be assumed that the charge included a fair profit for the rental service.

From what has here been said, we are of the opinion that the trial court could fairly compute the amount owing by Central Steel on account of the portion of the Ft. Lawton work which was incorporated in the original contract at the sum which the parties agreed was inserted in the original bid price, namely, $22,607. The amount of labor and materials furnished as extras or additional for the Ft. Lawton job amounted to $18,152.54, to which should be added a 10% profit or $1815.25, making a total for the extras of $19,967.79. This makes a total for Ft. Lawton of $42,574.79.

With respect to the labor and materials furnished on the Neah Bay job, we have noted that the total of these amounts is $23,429.12. Allowing 10% for profit on all but $1720.20 of this, the profit would come to $2,170.89, making a total for Neah Bay of $25,600.01. Thus the totals are:

For Ft. Lawton—$42,574.79
For Neah Bay    25,600.01  $68,174.80
                           ─────────
From this total we subtract
the amount paid                28,557.00
                           ─────────
Leaving a balance due of       $39,617.80

The trial court included in its judgment a sum of $4,284.00 which it found by subtracting from the original subcontract price of $32,841.00, the amount of

$28,557.00, paid. We find no possible basis for this. The original contract total included the Neah Bay foundation; that was never built. The court found that no contract covered the work actually done at Neah Bay. To make an award based on a contract which was never performed was wholly unjustified.

The court allowed interest upon its award from January 1, 1960, apparently on the theory that this was a date 60 days following completion of the work.[4] But the recovery here is not for any liquidated sum. The amount representing the bid price on the original Ft. Lawton work was more than covered by payments made. The whole amount awarded here is for the reasonable value of the work supplied. Under Washington law, such a recovery does not permit an award of interest prior to judgment, that is to say, the judgment to be entered pursuant to the mandate herein. Boespflug v. Wilson, 58 Wash.2d 333, 362 P.2d 747.

The judgment is reversed and the cause remanded to the district court with directions to enter judgment for the appellees and against the appellants for the sum of $39,617.80. Each party shall pay its own costs on this appeal.

4. The original contract provided for payment 60 days after completion.