H. W. CALDWELL & SON, INC., et al.,
Appellants,

v.

U. S. for Use and Benefit of JOHN H.
MOON & SONS, INC., Appellee.

No. 26147.

United States Court of Appeals
Fifth Circuit.

Feb. 11, 1969.

Rehearing Denied April 24, 1969.

Vardaman S. Dunn, Jackson, Miss.,
Overton A. Currie, Robert B. Ansley,
Jr., Atlanta, Ga., for appellants.

Alfred N. Crisler, Charles W. Crisler,
Jr., Jackson, Miss., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge:

This is a Miller Act (40 U.S.C. sec. 270a et seq.) case brought by the subcontractor, Moon & Sons, hereinafter referred to as Moon, against the prime contractor, Caldwell & Son, hereinafter referred to as Caldwell, for the balance owing for regular work performed under the subcontract and extra work resulting from the prime contractor's delay in performing.

Caldwell entered into a contract with the United States of America, hereinafter referred to as Government-owner, for highway construction. The contract includes the standard disputes clause of Standard Form 23–A utilized in Government construction contracts.[1] Moon

1. Disputes (a) Except as otherwise provided * * * any dispute concerning a question of fact * * * shall be decided by the Contracting Officer, * * * The decision of the Contracting Officer shall be final and conclusive unless, within 30 days * * * the Contractor mails or otherwise furnishes to the Contracting Officer written appeal addressed to the head of the agency involved. The decision of the head of the agency or his duly authorized representative for the determination of such appeals shall be final and conclusive.

contracted with Caldwell to do part of the construction work involved in the primary contract.

The Government-Owner terminated the contract and Caldwell, within the contractually-required time, notified the Government-Owner that it was invoking its remedies under the "disputes" clause for wrongful termination.

Moon subsequently brought this cause of action and Caldwell and the Surety filed a motion seeking a stay, injunction, suspension, abatement or dismissal of Moon's action pending exhaustion of administrative remedies against the Government-Owner under the standard "disputes" clause of the principal contract. That motion was overruled and this appeal followed.

Presented herein are two issues: (1) the appealability of the order overruling the motion to stay the proceedings and (2) the correctness of the decision denying the motion to stay.

We hold the order appealable and affirm the district court's denial of the stay.

■ With respect to the first question it is clear that the overruling of the motion to stay was not a final decision appealable under 28 U.S.C. § 1291. Caldwell contends, however, that the order below was in effect the denial of injunctive relief from which an appeal should be allowed pursuant to 28 U.S.C. § 1292 (a) (1). We agree.

In a 1962 decision, Jackson Brewing Co. v. Clarke, 5th Cir., 303 F.2d 844 this Court stated in an appeal from an order granting a stay:

we think the rule which has emerged from the various decisions can be stated thus: An order staying or refusing to stay proceedings in the District Court is appealable under § 1292

(a) (1) only if (A) the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law; and (B) the stay was sought to permit the prior determination of some equitable defense or counterclaim.[2]

The instant order, when viewed in light of the above rule, falls within the ambit of appealable orders. This action, brought under the Miller Act, is one at law and the stay was sought to await the results of the administrative remedies, which are equitable proceedings. Thus both (A) and (B) of the rule as stated by this court in Jackson Brewing, supra, are met,[3] and the order is appealable.

Turning to the second issue, the correctness of the District Court's ruling denying the stay, Caldwell contends that the subcontractor is bound by the "disputes" clause of the prime contract or that the equities of the case require a granting of the stay.

The contract of Moon, the subcontractor, with Caldwell, the prime contractor, contained the following provision:

Section V: The Contractor and Subcontractor agree to be bound by the terms of the Agreement, the General and Special Provisions, Drawings, and Specifications as far as applicable to this subcontract, and also by the following provisions:

The Subcontractor agrees: (a) to be bound to the Contractor by the terms of the General Contract between the Owner and Contractor, and the General and Special Provisions, Drawing and Specifications, and to assume toward the contractor all the obligations and responsibilities that he, by those documents, assumes toward the owner

2. Baltimore Contractors v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955) and City of Morgantown, West Virginia v. Royal Ins. Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949) were cited in the footnote to this passage.

3. The 9th Circuit in the case of Ets-Hokin & Galvan, Inc. v. United States for the Use and Benefit of Albert S. Pratt, Inc., 1965, 350 F.2d 871 dealing specifically with the issue of appealability of the denial of a stay order in a Miller Act case expressly permits the appeal.

insofar as concerns the subject matter of the Agreement:

Though these terms of the contract seem to bind the subcontractor to all the terms of the general contract similar provisions have been held not binding with respect to the "disputes" provision.

In the recent Miller Act case of United States for the use of B's Company v. Cleveland Electric Company of South Carolina, 4th Cir. 1967, 373 F.2d 585 the Court stated:

It is true that the terms of the subcontract stated that the subcontractor was bound by the terms of the prime contract and that it assumed the prime contractor's obligations to the Government insofar as applicable to the work performed by the subcontractor, but this identical language has been held, and we think properly, not to require the subcontractor to pursue the administrative remedies given the prime contractor in the disputes article. [Citations] * * * If the subcontractor is not paid, his only remedy is a suit under the Miller Act. He has no lien and no claim against the Government. This is the reason for the Act and, while this right to sue may be waived by clear and express provisions in the contract between the prime contractor and the subcontractor, no such provisions are contained in the contract at issue here and no such drastic curtailment of the subcontractor's rights will be read into a general agreement to be bound by the terms of the prime contract in so far as they affect the work of the subcontractor. [Citations] We think that that agreement was intended to cover the quality and manner of performance of the subcontractor, not the rights and remedies between the prime contractor and the subcontractor.

Other cases holding that similar provisions of the subcontract do not bind the subcontractor to pursue the administrative remedies provided for in the disputes clause of the general contract are: Fanderlik-Locke Co. v. United States for the Use of M. B. Morgan, 10th Cir. 1960, 285 F.2d 939; Central Steel Erection Co. v. Will, 9th Cir. 1962, 304 F.2d 548; Beacon Construction Co. of Mass. v. Pre-pakt Co., 1st Cir. 1967, 375 F.2d 977, and from this Court, Warrior Constructors, Inc. v. Harders, 5th Cir. 1967, 387 F.2d 727.

■ Almost all of the contracts between subcontractors and prime contractors in government construction cases contain language similar to or identical with the language in this contract. The benefits of the Miller Act are primarily intended for subcontractors, *Warrior Constructors, Inc., supra*, and the courts do not favor finding that a subcontractor has contractually abandoned his rights under the act. It appears clear that before a subcontractor will be held contractually bound to the procedure set out in the principal contract's "disputes" clause, there must be a provision in the contract between the sub and the prime making the "disputes" clause expressly applicable.

■ In the instant case there is no such clause but only a general incorporation by reference of the terms of the principal contract. We hold that this refers only to the quality and manner of the subcontractor's work, not the rights and remedies he may have against the prime contractor.

■ In addition there exists no clear and express waiver of the right to sue under the Act and without such a waiver the subcontractor is not bound by the "disputes" clause of the general contract.

The argument of the prime contractor, Caldwell, that equity will not be done if it is forced to simultaneously arbitrate with government and litigate with the subcontractor is not convincing. Suits by subcontractors against prime contractors under the Miller Act are common and are often brought while the prime

**24**

contractor's dispute with the government is still in the process of arbitration.

As stated in Fanderlik-Locke Co. v. United States, *supra:*

> The remedy for one seeking to recover for labor and materials furnished on a government contract is under the Miller Act, and ordinarily the fact that a prime contractor has a claim for the same amounts pending under the "disputes clause" of the prime contract, does not affect Miller Act cases.

It is clear to us that the "disputes" clause of the prime contract is not binding on the subcontractor and there is no equitable reason for staying the proceedings until the prime contractor has exhausted his administrative remedies.

For the reasons stated we allow the appeal and affirm the ruling of the District Court denying the stay.