**UNITED STATES of America for the Use and Benefit of T/N PLUMBING & HEATING CO., Plaintiff-Appellant,**

**v.**

**FRYD CONSTRUCTION CORPORATION, et al., Defendants-Appellees, American Fire & Casualty Company and United States of America, Intervenors-Appellees.**

**No. 27437.**

United States Court of Appeals, Fifth Circuit.

Feb. 19, 1970.

Rehearing Denied and Rehearing En Banc Denied April 13, 1970.

Hugh S. Glickstein, Hollywood, Fla., for appellant.

Eugene C. Heiman, Miami, Fla., for Fryd Const. Corp.

R. Earl Welbaum, Miami, Fla., for American Fire and Cas. Co.

William A. Meadows, Jr., U. S. Atty., Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, John S. Stephan, Gilbert E. Andrews, Paul M. Ginsburg, Attys., Dept. of Justice, Tax Div., Washington, D. C., for the United States.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

In this Miller Act (40 U.S.C. §§ 270a–270d) matter, suit was brought by use plaintiff T/N Plumbing & Heating Company, a subcontractor, against Fryd Construction Corporation and its surety, Travelers Indemnity Company, for the sum of $111,216.17, plus interest and attorney's fees, alleged to be due for material and services furnished in connection with the performance of certain drainage work on a Government construction job at Patrick Air Force Base, Florida, in which Fryd was the general contractor with the Government-owner. The contract was executed on November 30, 1962 on Standard Form 23A.

According to the allegations of the complaint, on December 6, 1962, Fryd entered into a subcontract with T/N to perform drainage work in connection with the Patrick Air Force Base job for the price of $66,140. Use plaintiff T/N further alleged that "As a direct and proximate result of the existence of * * * undisclosed interferences and obstructions" and "at Fryd's special instance and request" it furnished labor and material in prosecution of the work of the fair and reasonable value of $202,879.56 instead of the original agreed figure of $66,140, and that the net sum of $111,216.17 remains due and unpaid. American Fire & Casualty Company, surety on T/N's contract, intervened, claiming right of subrogation and written assignment and indemnification against T/N for sums which it expended on behalf on T/N, pursuant to the obligation under its bond. The United States intervened, asserting a claim for unpaid withholding taxes against T/N.

Fryd and Travelers defend the suit on the ground that the Miller Act is not applicable in this case, that the subcontract was expressly conditioned upon the general contract, that the subcontract required T/N to perform the prime contractor's obligations to the United States, and that the conditions of the general contract control the rights and obligations of T/N. According to the defense, Fryd and Travelers assert as to the disputed additional sum claimed by T/N, that the parties agreed to convert the dispute into one arising under the contract and, therefore, that the claim of T/N is limited to the specific equitable adjustments provided for in the general contract, especially Clause 6 relating to "disputes." The prime contractor contends that the subcontract incorporates, by reference, specific provisions of the general contract and cites the following provisions of the subcontract in support of this contention:

"14. This contract includes all of specifications, general conditions, and/or special conditions."

Further, from pertinent parts of paragraph 2:

"The following recitals are hereby declared to be true:

"(a) WHEREAS, the contractor and the owner have entered into a contract for the doing of the work therein described, with the terms of which contract the subcontractor acknowledges himself to be familiar; and

"(b) WHEREAS, the said general contract, and the plans, specifications and drawings described specifically the scope of the work which is required of and from the subcontractor to whom this subcontract is to be awarded; * * *."

Additionally, the prime contractor points to these provisions of the subcontract:

"3) The subcontractor hereby agrees to do all the work and furnish all the

materials required by the terms of the plans, specifications and drawings, and by the terms of the general contract, of and from the drainage structures subcontractor; and the subcontractor covenants and agrees with the contractor that the subcontractor will cause the said work to be done in such manner as will conform to and will comply with the relevant portions of the general or prime contract; and, in general, the parties understand and agree that the subcontractor shall do the subcontractor's portion of the work in such manner that if it were being done by the contractor, it would comply with the relevant portions of the general or prime contract." [1]

Thus the prime contractor argues that there has been incorporated, by reference, into the subcontract the provisions of the general contract, included among which is the following paragraph:

"6. DISPUTES

"(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the head of the agency involved. The decision of the head of the agency or his duly authorized representative for the determination of such appeals shall be final and conclusive. This provision shall not be pleaded in any suit involving a question of fact arising under this

contract as limiting judicial review of any such decision to cases where fraud by such official or his representative or board is alleged. Provided, however, that any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or is not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

From this the prime contractor concludes that the subcontractor has waived its right to sue under the Miller Act and has only those rights set forth in the specific equitable adjustments herein quoted and as provided for in the general contract.

Fryd argues that the provisions of the subcontract between it and T/N evidence this intention. Fryd refers to the following provisions of the subcontract in support of this contention:

"8) While the subcontractor is not in default in the performance of the terms of this contract, the contractor will pay the subcontractor the contract price in the following fashion; to wit:

"(a) Progress payments shall be made on the basis of requisitions made by the subcontractor on the        as disbursed by Owner        days of each month (sic); and each requisition shall include an amount which is the fair cost or value and is also the fair proportion of the total work, included in

---

1. Additionally, the prime contractor refers to the following provision of the subcontract:

    "12. The Subcontractor agrees to furnish all labor, equipment and material to complete all work as follows: Sec. #77, drainage structures; Sec.

#65 excavation, trenching and backfilling for utilities system as applicable. The work under Sec. #77 will be accomplished in accordance with the unit price schedule as set forth in bidding document for amounts as follows:"

the period covered by such requisition; and in general, the subcontractor shall never be entitled to include in any requisition any requirement for the payment of money which the contractor himself would not have been entitled to receive, for such work, under the terms of the general or prime contract;
* * *."

Reference is further made by Fryd to the following provision of the subcontract:

"9) It is further understood and agreed by and between the parties as follows:

* * * * * *

"(d) * * * it is understood and agreed by and between the parties that the subcontractor shall never be entitled to receive any payment under this contract from the contractor unless and until the contractor has received from the owner a payment which includes, correspondingly, payment for the work which is covered by the requisition of the subcontractor."

We have had occasion recently to consider a similar case under the Miller Act involving the suit of a subcontractor against a prime contractor, namely, H. W. Caldwell & Son, Inc. v. U. S. for John H. Moon & Sons, Inc., 5 Cir., 1969, 407 F.2d 21. In *Caldwell*, the claim of the subcontractor was for the balance owing for regular work performed under the subcontract and extra work resulting from the prime contractor's delay in performing. Caldwell, the prime contractor, contended that Moon, the subcontractor, was bound by the "disputes" clause of the prime contract because in the subcontract, the contractor and subcontractor agreed to be bound by the terms of the prime contract including its general and special provisions. Thus Caldwell argued that Moon had no right to bring a Miller Act suit but was bound by the "disputes" provision of the gener-

al contract requiring that the subcontractor pursue its remedies only under that clause. We said in *Caldwell* that the benefits of the Miller Act are primarily intended for subcontractors, 407 F.2d at 23, and that "the courts do not favor finding that a subcontractor has contractually abandoned his rights under the act." We held that for the principal contract's "disputes" clause to be applicable between the general contractor and a subcontractor, there must be a provision in the subcontract making the "disputes" clause expressly applicable. 407 F.2d at 23.

As in *Caldwell*, there is no such express provision in the subcontract between T/N and Fryd.[2] We hold, therefore, as we did in *Caldwell*, that a general incorporation by reference, of the terms of the principal contract, refers only to "the quality and manner of the subcontractor's work, not the rights and remedies he may have against the prime contractor." 407 F.2d at 23. See also, to the same effect, Warrior Constructors, Inc. v. Harders, Inc., 5 Cir., 1967, 387 F.2d 727; United States for the Use of B's Company v. Cleveland Electric Co. of South Carolina, 4 Cir., 1967, 373 F.2d 585; Fanderlik-Locke Co. v. United States for the Use of M. B. Morgan, 10 Cir., 1960, 285 F.2d 939, 942–943; Beacon Construction Co. of Mass. v. Prepakt Co., 1 Cir., 1967, 375 F.2d 977, 980–981.

The District Judge granted summary judgment in this case against use plaintiff T/N and in favor of Fryd and Travelers, American Fire & Casualty Company and the United States. In granting summary judgment in favor of Fryd and Travelers, the District Court said in part as follows:

"The subcontract was expressly made subject to the prime contract and to conditions contained in the subcontract. Among the subcontract condi-

---

2. Curiously enough, in the Fryd-T/N subcontract there is a numbered provision as follows:

"15. The Subcontractor acknowledges the inclusion of Clause #21 Standard Form 23A and all clauses set forth in Standard Form 19A as part of his contract, as set forth in Part 1 of the General Conditions of the specifications."

tions which bear on the issues are the following. The subcontract provides for a fixed subcontract price in Paragraph 7 thereof, and provides that there shall be no addition thereto or change in the amount thereof unless accomplished by a written instrument signed by both parties. This provision is binding and enforceable and except for the equitable adjustments authorized through the administrative procedures described herein no changes or deviations in the contract price were authorized by an instrument in writing signed by the parties. In addition, the subcontract provides and the subcontractor agreed, that it would never be entitled to receive any payment under the subcontract from the prime contractor unless and until the prime contractor has received from the Government a payment which includes, correspondingly, payment for the work which is covered by the requisition of the subcontractor. This provision is binding and enforceable and except for the sums which the Court heretofore found (in the Summary Judgment filed December 30, 1968, in this cause) that FRYD had lawfully withheld as a result of conflicting claims, all of the funds received from the Government as payment for the work under the subcontract have been paid to use plaintiff."

■ The reasons given by the District Court for granting summary judgment in favor of Fryd and Travelers are erroneous as a matter of law and are opposed to our holding in *Caldwell,* supra, as well as those of numerous other circuits whose decisions we have previously cited. We disagree, therefore, with the lower court's decision that the only remedy available to use plaintiff is to be found in "the equitable adjustments authorized through the administrative procedures" provided in the general contract between Fryd and the Government-owner. We also disagree with the contention of the prime contractor that the circumstance of appellant's participation and cooperation with Fryd in the

presentation of claims to the Armed Services Board of Contract Appeals estops appellant from asserting its claim here. The general contract here is between Fryd and the Government. T/N is, therefore, without standing before the Board and its conduct does not justify a holding of waiver or estoppel. In this regard we said, in our recent decision in Warrior Constructors, Inc. v. Harders, Inc., 5 Cir., 1967, 387 F.2d 727, 729, the following:

"Since there is no contract, express or implied, between a subcontractor and the government, there is no procedure by which the claim of a subcontractor can be presented against the United States except as it may become a claim of the prime contractor. A subcontractor has no standing before the Contracting Officer or the Board of Contract Appeals, and no provision is made for the hearing of disputes between a prime contractor and a subcontractor. The remedy for a subcontractor seeking to recover for labor and materials furnished on a government contract is under the Miller Act, and it has been held that when a prime contractor has a claim for the same amounts pending under the 'disputes clause' of the prime contract, a subcontractor's claim under the Miller Act is not affected."

■ Since we hold that T/N did not waive its rights under the Miller Act and that the summary judgment in favor of Fryd and Travelers is erroneous as a matter of law, it is necessary that we reverse and remand for a full evidentiary trial on the merits. It is obvious that there are complicated issues of fact to be tried which do not lend themselves favorably to disposition by summary judgment. Obviously, there is a dispute as to the nature and extent of the furnishing by T/N of material and services on the Patrick Air Force Base job; also, as to whether there were obstructions and interferences to T/N's performance, whether Fryd directed T/N to perform additional work and waived the provisions of the contract requiring such ad-

ditions to be reduced to a written agreement between the parties. (See subcontract, paragraph 7.) There are undoubtedly numerous additional issues of material fact which can only be resolved by taking of evidence at a trial. The disputes between T/N and Fryd cannot properly be resolved, therefore, by motion for summary judgment. See Fed. R.Civ.P., Rule 56.

It is quite a different matter, however, as to granting of summary judgment in favor of intervenors, American Fire & Casualty Company and the United States of America. The amounts paid by T/N's surety company, American, were not disputed, and reasonable and necessary attorney's fees were properly assessed. Nor was the amount of withholding taxes due intervenor, the United States, disputed. T/N's counterclaim against the United States cannot properly be used as an offset to this tax claim because T/N was not privy to the contract between the United States and Fryd, Warrior Constructors, Inc. v. Harders, Inc., 5 Cir., 1967, 387 F.2d 727, 729. Since T/N could not have brought an original suit against the United States, it may not defend by setoff or counterclaim the tax claim of the United States. See United States v. Patterson, 5 Cir., 1953, 206 F.2d 345. These summary judgments must, therefore, be affirmed.

Reversed and remanded as to judgment in favor of Fryd and Travelers; affirmed as to judgments in favor of American Fire & Casualty Company and the United States of America.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The petitions of plaintiff-appellant and defendants-appellees for rehearing are denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the suggestion of defendants-appellees for rehearing en banc is denied.