UNITED STATES of America, for the Use of INDUSTRIAL CONTRACTORS CORPORATION, Plaintiff,

v.

WILLIAM CLAIRMONT, INC. and National Surety Corporation, Defendants.

Civ. No. 71-0-324.

United States District Court, D. Nebraska.

April 3, 1972.

John G. Liakos, Omaha, Neb., for plaintiff.

Theodore L. Kessner, Lincoln, Neb., for defendants.

## MEMORANDUM AND ORDER

DENNEY, District Judge.

This matter comes before the Court on the motion of defendants for an Order staying this action pending the outcome of allegedly applicable contract dispute settlement procedures [Filing # 21].

The first claim of the complaint in this action is brought pursuant to the Miller Act, 40 U.S.C.A. § 270a et seq., against defendant, Clairmont, as prime contractor, and defendant, National Surety, as surety, upon the payment bond thereunder. The second and third claims seek recovery against defendant Clairmont only, in breach of contract and tort (negligence), respectively.

Defendant Clairmont is presently pressing an administrative claim against the government for additional compensation under the prime contract. Defendants argue that certain provisions of the prime contract and subcontract bind plaintiff to await the outcome of the administrative claim procedure and that it would be unfair to require Clairmont to pursue that administrative claim and defend in this action at the same time.

On the other hand, it is plaintiff's position that the damages sought are not the type of added compensation within the contemplation of the contractual terms and that plaintiff may well cease to exist as a viable business entity if it cannot speedily pursue its claims in this Court.

For the purposes of determining the motion for a stay, the Court will accept the following facts from defendants' brief in support of the motion as true. The contract and subcontract appended thereto are also accepted as being valid.

Defendant Clairmont entered into Contract No. DACW45–70–C–0042 with the United States through the Corps of Engineers of the United States Army on December 2, 1969. The project which the government sought to pursue was the construction of a new railroad bridge over the Missouri River near Bellevue, Nebraska. Other related temporary and permanent facilities were included in the project.

The government railroad bridge, authorized by the Flood Control Act of 1944, was to be completed, according to

the contract, as set forth in Paragraph 1 of the Special Provisions of the contract which, unfortunately, were not attached to defendants' brief. However, the completion date of Industrial Contractors' work, as set forth in the subcontract, was to be September 15, 1970.

For whatever reasons, the work of Industrial Contractors was not completed until subsequent to the contract date. Plaintiff alleges that, due to the acts and omissions of defendant Clairmont, added expenses were incurred in the completion of the subcontract work and that plaintiff was damaged in the amount of $103,262.03. Plaintiff, in its first claim, in addition to the above amount, seeks recovery of $6,039.00, allegedly due under the subcontract as a retained percentage of compensation earned.

Defendants allege that the disputes[1] provision of the prime contract is incorporated by reference into the subcontract via the subcontract incorporation[2] and changes[3] clauses,

---

1. 6. Disputes.

(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the head of the agency involved. The decision of the head of the agency or his duly authorized representative for the determination of such appeals shall be final and conclusive. This provision shall not be pleaded in any suit involving a question of fact arising under this contract as limiting judicial review of any such decision to cases where fraud by such official or his representative or board is alleged: *Provided, however,* that any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or is not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to *offer evidence in support of his appeal.* Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

(b) This Disputes clause does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

2. 1) *Reference to Prime Contract.* The Subcontractor shall fully comply with all applicable terms, provisions and conditions of the Prime Contract and of the plans and specifications for said work, which terms, provisions and conditions are by this reference incorporated in and made a part of this Subcontract.

3. 9) *Changes.* No changes or substitutions shall be made in the work covered by this Subcontract except upon written direction of the Contractor. If during the progress of the work, changes are made by the Owner which entitle the Contractor to an increase or subject the Contractor to a decrease in compensation as determined by the Owner in accordance with the prime contract above described, the Subcontractor shall be entitled to or subjected to a commensurate increase or decrease insofar as the changes relate to the Subcontractor's work hereunder. The Contractor shall give the Subcontractor notice in writing of all such changes, including the amount of any resulting increase or decrease in the compensation of the Subcontractor, and there shall be no additions to or deductions from the Subcontractor's compensation except upon such notice in writing. Claims of the Subcontractor for additional compensation because of changes must be submitted to the Contractor in writing for transmission to the Owner within 15 days from the date of receipt by the Subcontractor of notification of the proposed change. The Subcontractor agrees to accept the adjustment in compensation finally allowed to the Contractor by the Owner for the account of the Subcontractor as aforesaid and the Subcontractor shall have no right against the Contractor for changes beyond that which the Contractor is able to enforce against the Owner.

and that plaintiff is contractually bound thereby to await the outcome of the administrative claim which Clairmont has presented to the government.

Defendant recognizes the principle that a disputes clause in a prime government contract will not be held incorporated by reference into a subcontract unless the disputes clause is stated to be incorporated by express language set forth in the subcontract. United States for Use and Benefit of T/N Plumbing & Heating Co. v. Fryd Construction Corp., 423 F.2d 980 [5th Cir. 1970], cert. denied, 400 U. S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48; H. W. Caldwell & Son, Inc. v. United States for Use and Benefit of John H. Moon & Sons, Inc., 407 F.2d 21 [5th Cir. 1969]; United States for Use of B's Company v. Cleveland Electric Company of South Carolina, 373 F.2d 585 [4th Cir. 1967]; Central Steel Erection Co. v. Will, 304 F.2d 548 [9th Cir. 1962]; and Fanderlik-Locke Co. v. United States for Use of Morgan, 285 F.2d 939 [10th Cir. 1960], cert. denied, 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823 [1961].

The language of the changes clause of the subcontract does not persuade the Court that the subcontractor has waived his Miller Act rights. The very title of the clause indicates, as does the language thereafter, that it concerns itself with changes in the work directed by the owner (government) to be performed by the subcontractor. Nowhere in the clause is there any indication that the clause contains a comprehensive dispute settlement procedure, nor is any reference made to the disputes clause of the prime contract.

The following quote from Warrior Constructors, Inc. v. Harders, Inc., 387 F.2d 727, 729 [5th Cir. 1967] sets forth eloquently the law and reasoning behind it in cases such as this:

It is well established that the purpose of the Miller Act is to provide security for those who furnish labor and material in the performance of government contracts, and a liberal construction should be given the Act to accomplish this purpose. The benefits of the Act are not intended for the prime contractor who is required to furnish bond to effectuate its provisions. Since there is no contract, express or implied, between a subcontractor and the goverment, there is no procedure by which the claim of a subcontractor can be presented against the United States except as it may become a claim of the prime contractor. A subcontractor has no standing before the Contracting Officer or the Board of Contract Appeals, and no provision is made for the hearing of disputes between a prime contractor and a subcontractor. The remedy for a subcontractor seeking to recover for labor and materials furnished on a government contract is under the Miller Act, and it has been held that when a prime contractor has a claim for the same amounts pending under the "disputes clause" of the prime contract, a subcontractor's claim under the Miller Act is not affected.

To insure payment in full for such materials and labor, a general contractor is required to furnish sufficient bond to secure the contract. The right to sue on the surety bond is a right created by statute, and in absence of a novation or clear expression to the contrary, the contention that there has been a waiver or release of that right must fail. If a subcontractor is not paid, his only remedy is suit under the Act, within the one year period specified by the Act, and no drastic curtailment of these rights will be read into a general agreement absent clear expression to that effect. [Footnotes omitted]

Here, plaintiff asserts that its claim is not based upon changes ordered by the government, but upon delay and malfeasance of the prime contractor. It is obvious that this aspect of plaintiff's claim will not and could not be presented to the government. Where, as here, the claim of the subcontractor is against the prime contractor and not based upon the action or inaction of the government,

the disputes clause of the government contract (Standard Form 23–A) affords no mechanism for settlement of the dispute or reimbursement of the subcontractor. Only through the Miller Act lies redress for the subcontractor, if his claims are valid.

The Court further finds that, despite the assurances of defendant Clairmont, it is unlikely that the silent participation of plaintiff in the administrative hearings could settle the claim presented in the present action. Defendant Clairmont is unlikely to lend enthusiastic support to the successful assertion of a claim by plaintiff that defendant Clairmont was the cause of plaintiff's loss and is liable for plaintiff's damages.

■ Despite assertions to the contrary, the Court finds that the audit-price adjustments[4] clause of the prime contract does not indicate any reason for a stay of this action. Its incorporation by reference into the subcontract is, at best, questionable, especially considering subsection (c) of that clause.

■ Finally, Clairmont's argument respecting the difficulties caused it by requiring it to defend in this action during the pendency of the administrative

claim is not persuasive. Surely, it must take the same stance in each proceeding —that the government was the sole cause of all delays and damages. *See* H. W. Caldwell & Son, Inc. v. United States, etc., supra, 407 F.2d at 23.

It is therefore ordered that the motion of defendants for a stay of this action [Filing # 21] is denied.

---

4. 47. AUDIT-PRICE ADJUSTMENTS (NOV 1967)
(*Applicable to all contracts in excess of $100,000*) (a) This clause shall become operative only with respect to any change or other modification of this contract which involves a price adjustment in excess of $100,000, unless the price adjustment is based on adequate price competition, established catalog or market prices of commercial items sold in substantial quantities to the general public, or prices set by law or regulation.
(b) For purposes of verifying that certified cost or pricing data submitted in conjunction with such a contract change or other modification were accurate, complete, and current, the Contracting Officer, the Comptroller General of the United States, or any authorized representatives, shall—until the expiration of three years from the date of final payment under this contract—have the right to examine those books, records, documents, papers and other supporting data which involve transactions related to this contract or which

will permit adequate evaluation of the cost or pricing data submitted, along with the computations and projections used therein.
(c) The Contractor agrees to insert this clause, including this paragraph (c), in all subcontracts hereunder which when entered into exceed $100,000. When so inserted, changes shall be made to designate the higher-tier subcontractor at the level involved as the contracting and certifying party; to add "of the Government prime contract" after "Contracting Officer"; and to add, at the end of (a) above, the words, "provided that the change or other modification to the subcontract results from a change or other modification to the Government prime contract."
(The phrase "the Comptroller General of the United States," appearing in paragraph (b) of this provision, is not applicable to negotiated contracts including contracts awarded under a total (Small Business Restricted Advertising) set aside.) (ASPR 7–104.41(b) )