**UNITED STATES of America for the Use of DDC INTERIORS, INC., Plaintiff,**

v.

**DAWSON CONSTRUCTION COMPANY, INC. and United States Fidelity and Guaranty Company, Defendants.**

Civ. A. No. 94–B–2699.

United States District Court, D. Colorado.

July 25, 1995.

Hugh J. McClern, Milton L. Smith, Sherman & Howard, Denver, CO, for plaintiff.

Marcella T. Clark, Lowery & Clark, P.C., Denver, CO, D. Lee Roberts, Jr., Ware, Snow, Fogel, Jackson & Greene, Atlanta, GA, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This is a Miller Act case. 40 U.S.C. § 270a. Dawson Construction Co., Inc. (Dawson or prime contractor) and United States Fidelity and Guaranty Company (USF & G) (collectively, defendants) move to stay proceedings. Hearing was held on the motion on July 21, 1995. For the following reasons, I will deny defendants' motion.

### I.

In January, 1992, Dawson contracted with the United States General Services Administration (GSA) for the renovation/conversion of the Byron White United States Courthouse at 1823 Stout Street, Denver, Colorado. Dawson was to be paid over $20 million dollars under the contract. Dawson, as principal and surety, obtained from defendant United States Fidelity and Guarantee Company (USF & G), a $2,500,000 payment bond as required by the Miller Act, 40 U.S.C. § 270b, for the protection of all persons supplying labor and materials. Plaintiff DDC Interiors, Inc. (DDC or subcontractor) is a Colorado corporation which subcontracted with Dawson to furnish labor, materials, and equipment required for framing, drywalling, plastering, painting, wallpaper, and other associated work. The contract specifically excluded "skim coating or resurfacing of existing plaster walls unless shown or specified." DDC was to be paid $1,585,000 by Dawson, payable as work progressed. During the contract performance, the subcontract amount was increased by approved change orders to over $2,250,000. The last labor was performed by DDC on August 17, 1994.

DDC filed this action under the Miller Act, 40 U.S.C. § 270a and b for the balance due of

over $600,000 for alleged approved change orders and extra work. Dawson, the general contractor, moves to stay this action pending completion of its disputes resolution process with GSA. Dawson argues that the stay should issue based on terms of the subcontract. The dispositive issue is whether, and under what circumstances, a government subcontractor can surrender its rights to seek prompt payment under the Miller Act, 40 U.S.C. § 270a and b. I conclude that under the circumstances here, DDC did not clearly and expressly waive its Miller Act rights. Accordingly, I will deny the motion for stay of proceedings.

## II.

The predecessor of the Miller Act was the Heard Act, Act of Aug. 13, 1894, ch. 280, 28 Stat. 278. The Heard Act was passed because "many contractors constructing public buildings for the government were insolvent when entering into the contracts or at the completion of the work and because mechanics and materialmen's liens were not [allowed] on public buildings, persons furnishing labor or material to the contractors [subcontractors] were left without a remedy." *United States v. Daniel, Urbahn, Seelye and Fuller,* 357 F.Supp. 853, 857 (N.D.Ill.1973). Before the Heard Act, the practice was for contractors to post a bond for the protection of the United States. Then a statute was passed giving material and labor suppliers (subcontractors) the right to sue on the bond. H.R.Rpt. No. 97, 53d Cong., 1st Sess. 1 (1893). Contractors were obligated to "promptly make payments" to those providing materials and labor (subcontractors). If they did not, the subcontractors could bring suit "in the name of the United States for his or their use and benefit." Heard Act, 33 Stat. 811–12. However, the Heard Act provided that the subcontractors had to wait six months after completion of all construction before they could sue. On lengthy projects, this was often long after the subcontractors had supplied their labor and material. *United States v. Daniel, Urbahn, Seelye and Fuller,* 357 F.Supp. at 858–59. The "resultant hardship" on subcontractors was one reason for the repeal of the Heard Act and enactment of the Miller Act. *Id.* at 859.

H.R.Rpt. No. 1263, 74th Cong. 1st Sess. 1 (1935).

 The purpose of the Miller Act is "to provide security for those who furnish labor and material in the performance of government contracts. *F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc.,* 417 U.S. 116, 124, 94 S.Ct. 2157, 2162, 40 L.Ed.2d 703 (1974); *Warrior Constructors Inc. v. Harders, Inc.,* 387 F.2d 727, 729 (5th Cir. 1967); *Fanderlik–Locke Co., v. United States for Use of Morgan,* 285 F.2d 939, 941 (10th Cir.1960), *cert. denied,* 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823 (1961). The Miller Act is "highly remedial in nature," and its terms should be liberally construed. *J.W. Bateson Co., Inc. v. U.S. ex rel. Bd. of Trustees of Nat. Automatic Sprinkler Industry Pension Fund,* 434 U.S. 586, 594, 98 S.Ct. 873, 877, 55 L.Ed.2d 50 (1978). The Miller Act is not designed to benefit the prime contractor. *Fanderlik–Locke,* 285 F.2d 939, 941. Rather, it was enacted for "the especial protection of the subcontractor on a government construction contract." *United States for and on Behalf of Delta Metals, Inc. v. R.M. Wells Co., Inc.,* 497 F.Supp. 541, 544 (S.D.Ga.1980); *see United States for Use of F.E. Robinson Co. of N.C., Inc. v. Alpha–Continental,* 273 F.Supp. 758, 774 (E.D.N.C.1967), *aff'd,* 404 F.2d 343 (4th Cir.1968), *cert. denied,* 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 239 (1969). The risk of nonpayment for goods and services provided for a government project should be borne by the surety—not the laborers or materialmen. *United States for Use and Benefit of Mariana v. Piracci Constr. Co., Inc.,* 405 F.Supp. 904, 905 n. 2 (D.D.C.1975). Thus, the purpose of the payment bond required under the Miller Act is to "shift the ultimate risk of nonpayment from workmen and suppliers to the surety." *American Sur. Co. of New York v. Hinds,* 260 F.2d 366, 368 (10th Cir.1958). Under the Miller Act, a subcontractor may sue 90 days after the last day on which it supplied labor or material. 40 U.S.C. § 270b(a).

 Right to sue under the Miller Act may be waived by clear and express provisions in the contract between the prime contractor and the subcontractor. *United*

*States for Use of B's Co. v. Cleveland Elec. Co. of S.C.*, 373 F.2d 585, 588 (4th Cir.1967). However, courts "do not favor finding that a subcontractor has contractually abandoned his rights under the act." *H.W. Caldwell & Son, Inc. v. United States for Use and Benefit of John H. Moon & Sons, Inc.*, 407 F.2d 21, 23 (5th Cir.1969). Indeed, such a "drastic curtailment" of a subcontractor's rights will not be read into a general agreement by the subcontractor to be bound by the terms of the prime contract. *Id.; see Central Steel Erection Co. v. Will*, 304 F.2d 548 (9th Cir. 1962); *Fanderlik–Locke Co. v. United States for Use of Morgan*, 285 F.2d 939 (10th Cir. 1960), *cert. denied*, 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823 (1961).

Article I of the sub-contract between Dawson and DDC describes the portion of the general contract DDC was hired to perform. It specifically excludes, *inter alia*, "skim coating or resurfacing of existing plaster walls unless shown or specified." (Pltf.Opp.Exh. A p. 1) If "skim coating" was done, it apparently was covered as "extra work" as set out in Article IV:

> Sub-contractor shall make all alterations, furnish the material for and perform all extra work ... without nullifying this agreement at a reasonable addition to or reduction from the sub-contract price hereinafter named.... No changes are to be made, however, except upon written order from contractor ... The amount to be paid by contractor ... shall be stated in such order, if the amount can be agreed upon; but if not, then it shall be fixed by arbitration as provided in Article XI.

Article XI, however, does not mention arbitration.

█ Defendants also cite Article II of the subcontract, which provides Dawson the same rights against DDC as the GSA has against Dawson. However, this very general provision does not address DDC's rights against Dawson or against the surety. As such, it cannot purport to waive DDC's Miller Act rights.

█ Finally, defendants argue that the subcontract specifically incorporates by reference the 'plans, specifications and amendments' to the prime contract between Dawson and the GSA. The prime contract disputes clause, however, is not specifically referenced anywhere in the subcontract. Consequently, the incorporation by reference of the prime contract's disputes clause is general rather then specific.

Thus, there are two questions before me. First, does the subcontract's general incorporation language waive DDC's Miller Act rights by binding DDC to wait for payment until resolution of the disputes process being pursued by Dawson against GSA? Second, does Article XV of the subcontract waive DDC's Miller Act rights?

In *Fanderlik–Locke Co. v. United States for the Use of M.B. Morgan*, 285 F.2d 939 (10th Cir.1960), the prime contract contained an appeal procedure for disputed claims. The subcontract contained a general incorporation clause which stated that the subcontractor should be bound to the contractor "by the terms of the Agreement, General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner." *Id.* at 942. The prime contractor argued that this language in the subcontract incorporated the disputes procedure contained in Section 6 of the prime contract into the subcontract. As a result, Fanderlik–Locke argued that the subcontractor was required to comply with Section 6 before it could bring a Miller Act action. *Fanderlik–Locke*, 285 F.2d at 942. The 10th circuit determined that this language was insufficient to waive the protections of the Miller Act. Without specifying the precise language needed to waive the Miller Act, the court noted that the language in the subcontract did not refer to the settlement of disputes or the subcontractor's right to sue under the Miller Act. *Id.* at 943. In reaching this result, the court emphasized there was "no procedure by which the claim of a subcontractor can be presented against the United States except as it may become a claim of the prime contractor." *Fanderlik–Locke*, 285 F.2d at 942. Moreover, the court pointed out that "ordinarily the fact that a prime contractor has a claim for the same amounts pending under the 'disputes clause'

of the prime contract, does not affect Miller Act cases." *Id.*

■ Here, the subcontract does not mention the Miller Act. Also, the prime contract's disputes clause is not specifically referenced anywhere in the subcontract, nor is the contents of the disputes clause described or discussed. Under these circumstance, I conclude that the incorporation language in the subcontract does not effect waiver of DDC's Miller Act rights.

■ Article XV of the subcontract, a "pay upon payment" clause, presents a closer question. At best, by implication, Article XV may be said to give rise to a waiver of DDC's Miller Act rights. Circumvention of the Miller Act, however, cannot rest on mere implication. *See Fanderlik–Locke,* 285 F.2d at 941. Rather, any waiver of Miller Act rights must be "clear and express." *Cleveland Elec. Co.,* 373 F.2d 585, 588. The plain meaning of those terms contemplates a waiver which is definite, clear, *explicit,* and unmistakable. *See Webster's Third New International Dictionary,* pp. 419, 803 (1986) (emphasis added). At a minimum, an effective waiver of Miller Act rights must include mention of the Miller Act and unambiguously express intention to waive the rights provided by it. No such language is found in the contract documents before me.

Defendants also cite Article XI of the subcontract for the proposition that DDC must await the conclusion of an administrative appeal of their prime contract disputes with GSA. Article XI, however, applies only to the portion of the general contract set out under Article I of the subcontract. As mentioned above, Article I specifically excludes "skim coating." Thus, the bulk of DDC's claim is not covered by Article XI.

*Seal & Co., Inc. v. A.S. McGaughan Co., Inc.,* 907 F.2d 450 (4th Cir.1990) is inapposite. That suit was not brought under the Miller Act but the specific terms of the contract between the parties.

Accordingly, it is ORDERED that:

1. the defendant's motion to stay proceedings is DENIED.