**SEAL & COMPANY, INCORPORATED, Plaintiff–Appellee,**

v.

**A.S. McGAUGHAN COMPANY, INCORPORATED, Defendant and Third Party Plaintiff–Appellant,**

v.

**JOHN J. KIRLIN COMPANY, Third Party Defendant–Appellee.**

No. 89–1441.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1990.

Decided July 2, 1990.

---

Stephen John Johnson, Lyon and Mc-Manus, Washington, D.C., for defendant and third party plaintiff-appellant.

Paul Terrence O'Grady, Falls Church, Va., Samuel McCorkle Morrison, Jr., Braude & Margulies, P.C., Washington, D.C. (Herman M. Braude, Braude & Margulies, P.C., Washington, D.C., on brief), for plaintiff-appellee.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

BUTZNER, Senior Circuit Judge:

The principal issue raised in this appeal is whether the district court should have stayed this action pending the outcome of contractual dispute resolution proceedings. The district court denied a stay and awarded damages to a subcontractor against the general contractor engaged in work for the Washington Metropolitan Area Transit Authority (WMATA). We vacate the judgment and remand the case for the imposition of a stay and further proceedings consistent with this opinion.

A.S. McGaughan Co., Inc., is a general contractor which contracted with WMATA to perform the "finish work" on the Forest Glen Metro Station. Subsequently, McGaughan entered into subcontracts with Seal & Company, Inc., and John J. Kirlin Company to perform, respectively, the work described in the electrical specifications and mechanical specifications of the Contract Documents. The dispute in this case arose when McGaughan required Seal to perform work which Seal believed was outside the scope of its subcontract. Seal demanded additional money for the work and McGaughan refused to pay.

After Seal sued McGaughan for breach of contract, McGaughan moved to stay the proceedings, claiming the subcontract required Seal to follow the dispute resolution procedures outlined in the prime contract before seeking relief in court. The district court denied McGaughan's motion. McGaughan then filed a third party complaint against Kirlin, seeking indemnity on the basis that either Seal or Kirlin had been obligated to do the work.

Following a two day bench trial, the court dismissed McGaughan's third party complaint against Kirlin and ruled in favor of Seal on its complaint for damages. On appeal, McGaughan contends that the trial court erred in denying the motion to stay the proceedings and in finding that neither Seal nor Kirlin was responsible for the work in question.

I

This dispute is about payment for fire line bonding. The fire line is a water pipe

which runs through the tunnels of the Metro and is part of the fire suppression system. It is made of metal pipe which is four inches in diameter and ten or twenty feet in length. The sections of pipe are joined by a mechanical coupling device. The fire line must be grounded to discharge any stray electrical current that comes in contact with it. Unfortunately, the mechanical couplings have gaskets in them which interrupt the flow of electricity along the pipe and interfere with grounding. To restore the flow of electricity and allow for proper grounding, the sections of pipe can be electrically connected (bonded) across the joints by attaching a cable (bonding strap) to the pipe on each side of the joint. This procedure is called fire line bonding.

The dispute began when Kirlin received a letter from a contractor specializing in bonding which suggested that the bonding normally required by WMATA was mistakenly deleted from the contract specifications by the Special Provisions for section 1526 of the Contract Documents. The contractor offered to bid on the bonding work and suggested that Kirlin ask WMATA to clarify the matter. The contractor sent copies to McGaughan and Seal.

McGaughan forwarded the letter, along with a Request for Information, to WMATA. WMATA replied that the bonding work was required by the Contract Documents and referred to both section 1605 of the electrical specifications and section 1526 of the mechanical specifications. Consequently, WMATA maintained that the bonding work should be done at no additional cost. McGaughan forwarded WMATA's decision to Seal and Kirlin and eventually asked each of them to do the bonding. Kirlin refused. Seal agreed to do the work under protest and then filed its breach of contract suit after McGaughan refused to pay Seal additional money.

The underlying question in this case is who will pay for the fire line bonding which was performed under protest by Seal. The answer depends on whether the prime contract requires fire line bonding and, if so, whether it should have been performed by Kirlin pursuant to section 1526 of the mechanical specifications or by Seal pursuant to section 1605 of the electrical specifications. The threshold question, however, is whether the trial court should have stayed Seal's breach of contract suit pending the results of the dispute resolution process outlined in the prime contract. The answer depends on how the dispute resolution provisions of the prime contract and subcontracts are interpreted.

## II

Section 3 of the prime contract between WMATA and McGaughan, entitled "Changes," allows WMATA's Contracting Officer to "make any change in the work within the general scope of the Contract." Such "change orders" are compensable if they increase the contractor's costs. Disputes over whether certain work constitutes a change order or whether it is within the original contract are settled pursuant to section 6, "Disputes." Section 6 provides that the contractor must submit its claims to the Contracting Officer who, upon request, issues a written Final Decision. That decision is reviewable by WMATA's Board of Directors or their authorized representative, which in this case is the Army Corps of Engineers Board of Contract Appeals. The board's decision, if adopted by WMATA's Board of Directors, is final and binding on the parties unless a court finds the decision fraudulent or not supported by substantial evidence.

In effect, the changes and disputes provisions transform potential breach of contract claims into claims under the contract. By agreeing to these provisions, McGaughan has agreed to rely on administrative procedures to resolve disputes over work within the general scope of the contract, subject to limited judicial review. The general provisions of Seal's and Kirlin's subcontracts are identical. Their subcontracts include the following provision regarding change orders and dispute settlement:

7. *Changes*

a. Contractor may ... make changes in the work covered by this Subcontract.... Subcontractor shall perform the work as changed without delay.

b. Subcontractor shall submit in writing any claims for adjustment in price, ... for changes directed by Owner or as a result of deficiencies or discrepancies in the Contract Documents, to Contractor in time to allow Contractor to comply with the applicable provisions of the Contract Documents. Contractor shall process said claims in the manner provided by and according to the provisions of the Contract Documents. Subcontractor adjustments shall be made only to the extent that Contractor is entitled to relief from or must grant relief to Owner....

c. For changes ordered by Contractor independent of Owner or Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract price.

. . . .

9. *Settlement of Disputes*

a. In case of any dispute between Contractor and Subcontractor, due to any action of Owner or involving the Contract Documents, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to Owner, by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder....

. . . .

b. With respect to any controversy between Contractor and Subcontractor not involving Owner or the Contract Documents, Contractor shall issue a decision which shall be followed by Subcontractor. If the Subcontractor is correct as to the controversy, Subcontractor shall be entitled to an equitable adjustment in the contract price as its sole remedy.

Joint App. at 684.

In terms of these subcontract provisions, Seal is seeking an equitable adjustment under sections 7(c) and 9(b), claiming that the fire line bonding dispute does not involve WMATA or the Contract Documents. Conversely, McGaughan contends that both WMATA's actions and the Contract Documents are central to the dispute and, accordingly, sections 7(b) and 9(a) apply.

Section 9(a), if applicable, would incorporate the disputes provisions of the prime contract, *see Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 979–80 (4th Cir.1985), and require administrative resolution of the dispute. *See United States v. Anthony Grace & Sons*, 384 U.S. 424, 428–29, 86 S.Ct. 1539, 1542, 16 L.Ed.2d 662 (1966); *Bethlehem Steel Corp. v. Grace Line, Inc.*, 416 F.2d 1096, 1106 (D.C.Cir. 1969). Section 9(b), if applicable, allows for direct judicial resolution of the dispute. Which sections apply depends in part on how the "Contract Documents" are defined.

The main Contract Documents were drafted by WMATA and include the General Provisions and Standard Specifications, the Contract Drawings, and the Special Provisions. The General Provisions and Standard Specifications, along with the Contract Drawings, provide the general requirements for all WMATA construction projects. These general requirements are catalogued in the "white book," which is available to all interested contractors. For each construction project, WMATA issues a list of applicable general requirements, along with any Special Provisions which modify those requirements. Using the list, the contractors can then refer to the "white book" to determine what each job entails.

The subcontracts are relatively brief documents which outline the relationship between the contractor and the subcontractor. The actual work to be done is described in the Contract Documents. All the Contract Documents related to the specific construction project are listed in exhibit A of the subcontracts and are incorporated by reference. The specific sections of Contract Documents for which the subcontractor is directly responsible are listed in exhibit B of the subcontracts.

Exhibit B of Seal's subcontract incorporates section 1605 of the General Provisions and Standard Specifications, entitled "GROUNDING and BONDING." Section 1605 calls for the bonding of "pressure pipes" and "pipe parallel to and within 20 feet of centerline of track." Arguably, this section requires Seal to perform fire line

bonding inasmuch as the fire line pipes meet this general description. There are no Special Provisions modifying the bonding language in section 1605.

Exhibit B of Kirlin's subcontract incorporates section 1526 of the General Provisions and Standard Specifications, entitled "FIRE PROTECTION, SUPPRESSION and ALARM." Section 1526 outlines the procedures for installing the fire line and includes subsection 3.1(I)(6) which says to "provide bonding across couplings for stray current protection." This language clearly calls for Kirlin to do the bonding. However, the Special Provisions for section 1526 create some ambiguity by deleting certain subsections of 1526 which relate to bonding. With reference to the "Execution" of Section 1526, Subsection 3.1(N) provides: "Bonding: Does not apply." There is some question about whether that deletion applies to stray current bonding or cathodic protection bonding or both. Only stray current bonding is at issue in this case. The Contract Drawings include a section on fire line bonding. Detail 4 on drawing number FB9–M–12 illustrates a typical fire line pipe joint, complete with a bonding strap and a note which says bonding is required on all mechanical joint couplings.

### III

McGaughan's first assignment of error is that the trial court should have stayed the proceedings pending the outcome of the dispute resolution process outlined in the prime contract. McGaughan contends that the parties were contractually obligated to follow that process prior to seeking judicial relief.

■ The general rule is that parties are free to contract for dispute resolution procedures which, in effect, turn breach of contract claims into claims for relief under the contract. See United States v. Utah Constr. & Mining Co., 384 U.S. 394, 404, n. 6, 86 S.Ct. 1545, 1551, n. 6, 16 L.Ed.2d 642 (1966). Parties are bound to exhaust such procedures unless they are "inadequate or unavailable," as, for example, where the Contracting Officer or the Appeals Board

is unwilling to act. United States v. Grace & Sons, 384 U.S. 424, 430, 86 S.Ct. 1539, 1543, 16 L.Ed.2d 662 (1966). In addition, the "inadequacy or unavailability of administrative relief must clearly appear before a party is permitted to circumvent his own contractual agreement." Id. Thus, we must first examine the language of the contracts to determine whether the administrative procedures of the prime contract apply to the fire line bonding dispute and, if so, whether those procedures are available to Seal and provide for adequate relief.

■ Specifically, the question of contract interpretation before us is whether the fire line bonding dispute falls under section 9(a) or 9(b) of the subcontract. The former requires administrative resolution with the possibility of limited judicial review; the latter allows for direct resort to the courts. The critical language in section 9(a) binds the Subcontractor to the Contractor to the same extent the Contractor is bound to the Owner in "any dispute between the Contractor and Subcontractor, due to any action of Owner or involving the Contract Documents...." As discussed above, section 9(a) incorporates the dispute provisions of the prime contract if the Contract Documents are at issue.

A review of the record indicates that the fire line bonding issue centers on the interpretation of sections 1526 and 1605 of WMATA's General Provisions and Standard Specifications. These documents are "Contract Documents;" in fact, they are first on the list of "Contract Documents" included in Exhibit A of Seal's and Kirlin's subcontracts. Seal's argument that these "Contract Documents" lose their status as such when they are incorporated into the subcontracts is without merit. Accordingly, article 9(a) should apply, barring some exception.

Seal also contends that it cannot obtain adequate relief under the contract because, if the bonding work is found to be in the contract, the administrative appeal will not resolve the matter of which subcontractor was responsible for it. Consequently, Seal

argues, it would be futile to follow the administrative procedures.

It seems reasonable, however, to expect the decision of the Board of Contract Appeals to clarify the matter. If the Board determines that fire line bonding is required by the prime contract, then it will probably point out where that requirement is located, or at least provide an explanation which will aid the district court in making that determination. If, on the other hand, the Board finds there was no bonding requirement, then Seal will be reimbursed for its work after WMATA pays McGaughan. In any event, Seal has not shown by clear evidence that the administrative remedies are inadequate or unavailable. *Cf. Humphreys & Harding, Inc. v. Pittsburgh–Des Moines Steel Co.*, 397 F.2d 227 (4th Cir.1968).

Therefore, we find that the parties are contractually bound to exhaust the administrative procedures available to them and, consequently, that the district court erred when it denied McGaughan's motion to stay the proceedings pending the exhaustion of those procedures.

## IV

The issue here is whether, as the trial judge concluded, McGaughan waived its right to seek an administrative solution to the dispute with respect to Kirlin after having forced Kirlin to defend itself in court. We find no waiver. Seal initiated the law suit, not McGaughan. McGaughan was an unwilling party to the litigation and consistently argued that any questions about whether bonding was required under the prime contract should be referred to the Board of Contract Appeals, as mandated by section 9(a). McGaughan brought Kirlin into the suit as a third-party defendant only after the trial judge had denied McGaughan's motion to stay the proceedings and ruled that the administrative dispute resolution procedures of section 9(a) did not apply. In the third party complaint against Kirlin, McGaughan reiterated that he was pursuing an administrative decision on the bonding issue. Kirlin, no less than Seal, is bound by section 9(a) in which it

agreed to be bound to the same extent as McGaughan by a final decision in the administrative proceedings if it is determined in those proceedings that the dispute arose out of any action of WMATA or involved the Contract Documents.

It was the district court that deprived McGaughan of the contractual benefits of section 9(a). McGaughan retained the right to seek reversal of the district court's judgment based on this ruling. Pending review by this court, he did not waive his right to seek an administrative solution to the dispute. In light of the district court's ruling, he could proceed under alternate theories of breach of contract in the district court while preserving his claim to enforce the contract through administrative procedures. *Cf. Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981–83 (4th Cir.1985).

## V

We vacate the judgment of the district court with respect to the relief granted to both Seal and Kirlin, and remand with instructions to stay the proceedings pending the final outcome of the dispute settlement procedures outlined in section 6 of WMATA's General Provisions. If McGaughan prevails in the administrative appeal and WMATA's order to perform the bonding is considered a "change order," then WMATA will pay McGaughan for the bonding. McGaughan must then reimburse Seal pursuant to sections 9(a) and 7(b) of the subcontract. If McGaughan loses the appeal and the bonding is considered part of the original contract, then the court must determine, this time with the aid of the board's decision, where bonding is required in the Contract Documents and which subcontractor is responsible for it or whether both are jointly responsible.

Judicial review of the administrative determination is limited by section 6, which is similar to section 1 of the Wunderlich Act, 41 U.S.C.A. § 321, calling for a deferential standard of review. Because we have vacated the award of damages, we find it unnecessary to consider McGaughan's objections to several items for which Seal

claims compensation. Each party shall bear its own costs.